IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2017

**STATE OF TENNESSEE v. SPENCER T. GIBSON**

**Appeal from the Criminal Court for Davidson County
No. 2012-D-3320   Mark J. Fishburn, Judge**

_____

**No. M2017-00325-CCA-R3-CD**

_____

Defendant, Spencer T. Gibson, pled guilty in the Davidson County Criminal Court to the offense of robbery and received a sentence of eight years on supervised probation. We note that Defendant agreed to be sentenced outside of the statutory range in exchange for the reduced charge. On February 9, 2016,  a probation violation warrant was issued. Following a hearing, the trial court revoked probation and ordered Defendant to serve the balance of his sentence by incarceration. On appeal, Defendant argues that the trial court abused its discretion in revoking his probation and ordering him to serve his eight-year sentence in confinement. We affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

David Von Wiegandt, Nashville, Tennessee, for the appellant, Spencer Tyrone Gibson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Lody R. Limbird, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

At the probation violation hearing Detective Jason Door of the Metropolitan Nashville Police Department, Domestic Violence Division, testified that on the evening of June 15, 2016, he responded to a call at Dellway Villa, apartment G-209.  There were multiple patrol officers and the S.W.A.T. team was present when he arrived, and

Defendant was holding the victim, Tondrea Chandler, inside the apartment. The victim's mother, Latika Jones, and Kaylin Smith were also present at the scene. Ms. Smith was upset and concerned for the victim. Detective Door testified that Ms. Smith told him that she was in the apartment with the victim when Defendant came home intoxicated and accused the victim of looking at another man on her cellular phone. Ms. Smith told Detective Door that she observed Defendant assault the victim while the victim was in the shower, and he dragged the victim out of the apartment naked. She said that Defendant assaulted the victim multiple times while outside. Ms. Smith left the apartment after she was unable to calm Defendant down. He then dragged the victim back inside the apartment and locked the door.

Other officers on the scene attempted to get Defendant to come out of the apartment but there was no verbal response from Defendant. Ms. Jones was eventually able to plead with Defendant by phone, and he finally allowed the victim to leave. Detective Door spoke with the victim and observed injuries to her lip, back, and side. The injuries were consistent with what Ms. Smith and the victim said had happened.

On cross-examination, Detective Door testified that the victim never told him that she was dragged out of the shower or assaulted in the shower. He agreed that Ms. Smith's story and the victim's story had differences. Upon questioning by the trial court, Detective Door testified that the victim appeared to be upset when she came out of the apartment, and Defendant came out ten to eleven minutes later. Defendant told Detective Door that nothing happened, there were no threats of violence, and no incident occurred. Defendant did not explain why he would not come out of the apartment when police first arrived.

On redirect examination, Detective Door testified:

> [The victim] stated that [Defendant] came home intoxicated and got mad at her for what's called screen-shoting [sic] a photo of an old boyfriend on her phone. She stated that [Defendant] was in her face, yelling, and she was afraid because he was aggressively in her face, so she hit him in self-defense. She stated that the suspect then assaulted her by striking her and dragging her off the couch. [The victim] stated that she tried to fight the suspect away and he continued to grab her and throw her back and forth, causing her to suffer those minor injuries that we discussed in those photos. And she did have those scratch marks on her side, back and upper bottom lip.

He said that Defendant and the victim were in the apartment for approximately two hours.

Terry Faimon testified that at the time of the offenses in this case he was the "Deputy Director for Domestic Violence PSU." He participated in the investigation in the present case, and he reviewed jail phone calls placed by Defendant. He explained that all calls made from the jail are recorded, and the sheriff's office provided him with a CD and a case summary of the calls. The calls ranged in date from June 16 to June 20, 2016. During one call placed at approximately at 9:47 p.m. on June 19, 2016, Defendant talked with a "female by the name of Mariah, then asked to do a three-way call, telling the person on the other end to unblock the phone number, and that person was found to be the victim." The phone call was played for the trial court, and Mr. Faimon testified that he had reviewed the call. During the call, Defendant apologized to the victim, discussed the probation violation proceedings, and he attempted to convince the victim not to speak with prosecutors.

Mr. Faimon also reviewed a phone call placed on June 19, 2016, at 10:46 a.m. Approximately six minutes into the call, Defendant mentioned the victim's name as the person to whom he was speaking. At the time, Defendant's case had been set for hearing in General Sessions Court. During the call, the victim told Defendant that she did not want to talk to him, and Defendant yelled vulgarities at the victim and stated, "I'm going to kill you when I get out."

During his proof, Defendant played the audio recording of the victim's interview with police. She told the investigator that Defendant was drunk and that he dragged her from the couch because he was angry that she had made a screenshot of her former boyfriend. The victim also told the investigator that she hit Defendant because she knew from past experiences that he would continue to escalate the violence. She also said that they got into a physical altercation, that Defendant "slung" her around, and that Defendant threatened Ms. Smith when she attempted to call the victim's mother.

After hearing all of the proof, the trial court made the following findings:

> In looking at the evidence, I mean, just look at the circumstantial evidence; you have a 9-1-1 call that leads to ultimately S.W.A.T. and numerous other emergency vehicles arriving at their apartment, efforts to get through to them are going - - are unsuccessful. When she comes out, we know two things, multiple bruising to her back, which it was unlikely that she caused to happen herself; and the one thing that they agreed on, this whole thing started over him getting mad about a screen shot. It's reasonable to conclude that those injuries were a result of his assault of her, so the Court's satisfied that there's a domestic assault. I don't know if there was, it certainly could be reasonably concluded that there was false imprisonment going on, if not an out and out kidnapping. But there's also the issue that he was intoxicated, and he's been cited for that in the probation violation warrant as well because he's not supposed to

be drinking. This is his fifth violation, at least two, and I think three of his prior violations involve domestic assault against this very woman. In fact, I had it set up that he was not even supposed to be anywhere on the east or north side for all intents and purposes to try and keep him away from her, that's not cited, but it just goes to, I mean, it's indicative that seven months isn't going to do any good because prior short-term incarcerations can't get him to listen to what the Court has ordered him to do.

It is clear that he is going to continue to have contact with this woman. It is clear that he is going to ignore the orders of this Court that have been constructed time and time again to try and keep him on the right path so his 18-year [sic] sentence didn't go into effect. We've been down this road four times totally without success. The Court is satisfied - - then you add the jail calls where he is apologizing to her, trying to keep her from coming in, all indicative of the guilty knowledge that he had perpetrated some level of wrongdoing against her. It's obvious to the Court that he's guilty of domestic violence, and that in fact, I think on that one phone call, he said "When I get out of here, I'm gonna kill you," which is probably where this thing has been leading for the last three or four years.

It's time to give it up, the Court finds that he violated the terms and conditions of his probation by committing a domestic violence assault and by being intoxicated, by his own admission, he was intoxicated. So, for those reasons, the Court will place the sentence into effect. All other avenues that we've attempted in the past have been totally unsuccessful and it's time just to accept the reality of it.

**Analysis**

Defendant argues that the trial court abused its discretion by revoking his probation. We find that the trial court properly revoked Defendant's probation and placed his original eight-year sentence into effect.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. T.C.A. §§ 40-35-310, -311. The revocation of probation lies within the sound discretion of the trial court. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn.2001); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Stubblefield*, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that

the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. *See Black v. RomanoI* 471 U.S. 606, 613 (1985); *Gagnon v. ScarpelliI* 411 U.S. 778, 786-90 (1973). However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. *Gagnon*, 411 U.S. at 786; *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Pursuant to *State v. Liederman*, 86 S.W.3d 584, 589 (Tenn. Crim. App. 2002), where the transcript indicates that the trial court made oral findings at the conclusion of the probation revocation hearing regarding both the grounds for revocation and the reasons for the court's finding, as in the present case, the requirement of a "written statement" is satisfied.

First, Defendant argues that there was "no substantial evidence to support the trial court's conclusion that a probation violation occurred." He contends that all of the evidence in support of the probation violation came from Ms. Smith's statements to Detective Door and that such statements were "testimonial hearsay in violation of the Confrontation Clause." Defendant further contends that the testimony by Detective Door concerning Ms. Smith's statements could not be admitted as excited utterances because they described past events and did not assist in an ongoing emergency. However, we find that it is not necessary to consider these issues because the trial court did not rely on the statements made by Ms. Smith to revoke Defendant's probation.

During the probation revocation hearing, the following exchange took place:

[Prosecutor]: To your knowledge, were there two 9-1-1 calls placed regarding this incident?

[Detective Door]: I cannot recall how many.

[Prosecutor]: If there were two 9-1-1 calls uploaded to the RMS System related linked to this incident report, would that be accurate?

[Detective Door]: Yes.

[Prosecutor]: Was one of the callers [the victim's] mother, do you know?

[Detective Door]: I cannot recall.

[Prosecutor]: So, when you arrived, you encountered Ms. Chandler, [the victim's] mother, correct, and a witness, correct?

[Detective Door]: Yes.

[Prosecutor]: And you stated that the witness appeared upset?

[Detective Door]: Yes.

[Prosecutor]: Was she crying, shaking, nervous? What was her physical - - what was her demeanor?

[Defense Counsel]: Objection to leading.

[Prosecutor]: What was her demeanor? What was her demeanor?

[Detective Door]: She appeared concerned. I don't think she was crying, she just appeared concern[ed] for the situation that her friend was in.

[Prosecutor]: To your knowledge, did she witness answer [sic] incident?

[Detective Door]: Yes.

[Prosecutor]: Your Honor, at this point I would ask the Court to permit Detective Door to testify as to what were the statements related to him by the witness, Ms. Smith.

[Defense Counsel]: I will object to that. Detective Door is going to testify about statements from a witness about prior events that have already occurred. These are testimonial statements. They're not non-testimonial, it's not an ongoing emergency.

THE COURT: Apparently it is an emergency. We supposedly have your client who had confined [the victim] inside an apartment to the

extent that there's multiple police officers and S.W.A.T. teams out there, I wouldn't say that the emergency has subsided.

[Defense Counsel]: Correct. Whether or not this was an emergency is only part of the issue, the statements have to be made to address the emergency. These statements in no way assist the police officers in getting help with this alleged victim. They talk about what may or may not have happened previously, 20 or 30 minutes prior.

THE COURT: It's kind of difficult to assess. It it's an ongoing emergency, I believe it would be admissible for the police to find out who's inside, was there a gun involved, are there any threats of killing her or the things of that nature, so that they know how to approach the situation. I mean, if there's no guns involved, they just walk in the door. If there's an indication of a gun or threats of killing her if anybody comes in or things of that nature, that's a totally different situation, so I think to some extent information may be relevant and admissible to address the ongoing emergency. So I'll just have to listen to it and I'll weed out what's not and I'll let you know what that is.

[Prosecutor]: Your Honor, I have two responses for defense counsel; based on a hearsay exception, You Honor, these statements were allowed in general sessions, and I would ask Your Honor to please allow them today as well. Ms. Smith is still, she observed them in an incident between the defendant and [the victim], two other individuals called 9-1-1. There's still an ongoing emergency, so they're not testimonial. S.W.A.T. team is present at the location and [Defendant] is inside the apartment with [the victim].

THE COURT: Well, that's what I'm saying, I think some of it may be admissible despite the fact that it's hearsay, some of it may not, so I'm gonna listen to whatever it is she tells him and I'll weed out what I think is admissible and ignore the rest of it.

[Prosecutor]: Detective Door, what did Ms. Smith tell you she observed?

[Detective Door]: She stated that she was in the apartment with [the victim] at the time when [Defendant] came home intoxicated and accused the victim of looking at another guy on her phone.

[Defense Counsel]: Your Honor, I object to that, that is not relevant to resolving the emergency. If he was saying [Defendant] was there, that's relevant.

THE COURT: I'm going to listen to the statement. I agree, that's not relevant and I will ignore it, but I've got to put everything in context. I can't have him give me half a sentence about what she told him and ignore the other part, you got to put it in context and then, believe me, I am more than capable of weeding out the evidence or testimony or statements that she made that do not comport with our rules of evidence.

[Defense Counsel]: Yes, Your Honor.

[Detective Door]: She stated he was intoxicated, which was important for us to know to know what state of mind he could have been in. She observed [Defendant] assault the victim while she was in the shower and observed him drag her out of the apartment undressed. She stated that [Defendant] held her outside of the apartment and then assaulted her multiple times. Ms. Smith then said she left the apartment when she was unable to calm [Defendant] down and that [Defendant] then dragged [the victim] back into the apartment against her will and locked the door behind him.

[Prosecutor]: And when you arrived, was Ms. Smith outside of the apartment?

[Detective Door]: She was.

We agree with the State that the trial court did not solely rely on Ms. Smith's testimony in finding that Defendant violated his probation. The trial court noted that it wanted to hear Ms. Smith's statements in order to "put everything in context," and the trial judge specifically stated that he was capable of "weeding out the evidence or testimony" that did not "comport with our rules of evidence." The trial court considered that multiple law enforcement officers responded to a 9-1-1 call that had been placed. The victim and Defendant were together in the same apartment, police could not get through to them, and the victim sustained injuries. This evidence did not come from Ms. Smith but from Detective Door, who was there on the scene, and was sufficient to support the trial court's finding that Defendant committed a domestic assault against the victim. The trial court additionally relied on jail phone calls between the victim and Defendant to show Defendant's guilty knowledge.

We note that the trial court additionally found that Defendant violated his probation by being intoxicated, and Ms. Smith told Detective Door that Defendant was

- 8 -

intoxicated at the time of the assault. The trial court also mentioned that the domestic assault incident started over Defendant "getting mad about a screen shot," which Ms. Smith also told Detective Door. However, Detective Door testified that the victim also gave him all this information at the scene. Additionally, the recording of the victim's interview with Detective Door containing this information was introduced by Defendant at the probation revocation hearing. The trial court specifically noted at the probation revocation hearing that he would ignore Ms. Smith's statement that Defendant came home intoxicated and accused the victim of looking at another man on her phone.

Defendant asserts that the trial court erred by considering Ms. Smith's statements to Detective Door because her statements were not credible and inconsistent with statements made during the victim's interview with police. However, it is for the trial court to determine the credibility of witnesses at a probation revocation hearing. *State v. Farrar*, 355 S.W.3d 582, 585 (Tenn. Crim. App. 2011); *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978). We see nothing in the victim's statements that would have cast so much doubt on Ms. Smith's statements that the trial court could not have considered the statements if it had wanted to. However, as stated above, the trial court did not rely on Ms. Smith's statements to find that Defendant violated his probation. Therefore, this issue is without merit.

Second, Defendant contends that the trial court erred in admitting his jail phone calls to the victim because he claims that the calls are irrelevant. The State argues that the calls are relevant to show Defendant's guilty knowledge and "of the volatility in his relationship with the victim." We agree with the State.

Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not determined to be relevant is inadmissible. Tenn. R. Evid. 402. In addition, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice has been defined by the Tennessee Supreme Court as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Advisory Committee Notes). "Prejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror." *State v. Young*, 196 S.W.3d 85, 106 (Tenn. 2006) (citations and internal quotation marks omitted). Whether evidence is relevant is a decision left to the discretion of the trial court, and this court will not overturn a trial court's determination regarding relevancy without a showing that the trial court abused its discretion. *State v. Brown*, 373 S.W.3d 565, 573 (Tenn. Crim. App. 2011) (citing *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App.

1995) ). Additionally, as noted above, "the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *Franklin*, 308 S.W.3d at 809 (citing *Lewis*, 235 S.W.3d at 141).

Rule 404(b) prohibits admission of evidence of a defendant's character offered for the purpose of proving that he or she acted in conformity with that character except when it may be relevant to the defendant's motive, intent, guilty knowledge, identity of the defendant, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. *See* Tenn. R. Evid. 404(a); *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004).

The following exchange took place at the revocation hearing concerning this issue:

[Prosecutor]:     Your Honor, the State moves to introduce the jail calls as exhibit 2 to this hearing along with the case summary.

THE COURT:     All right.

[Defense Counsel]:   And Your Honor, I will object to that, there were no statements about the incident. He's not violated for making a threat over a phone. He's violated for what he was arrested for.

THE COURT:     It's circumstantial evidence of his outrage towards her because he doesn't seem to be cooperating, trying to keep her from coming to court, apologizing, then cursing her when it doesn't appear that she's cooperating are all circumstantial evidence of guilty knowledge.

[Defense Counsel]:     Your Honor, that would be forfeiture by wrongdoing trying to get her not to come to court.

THE COURT:     Which was on the first telephone call about not cooperating with the D.A.

[Defense Counsel]:     Which would be a reason not to get in her testimony through hearsay. Whether or not he threatened her though is not a violation of probation because he's not violated for that.

THE COURT:     I'm not talking about that, it is circumstantial evidence though of whether or not he may have committed the crime that brought about the probation violation.

[Defense Counsel]: Yes, sir.

THE COURT: That's what I'm saying. It's kind of a 404(b) to establish his guilty knowledge of the incident that did result in the PV issuing, so they're admissible, they'll be marked as exhibit number 2.

We conclude that the recordings of the jail phone calls between the victim and Defendant were probative of Defendant's guilty knowledge. During one call placed at 10:46 a.m. on June 19, 2016, the victim told Defendant that she did not want to talk to him. Defendant then began yelling vulgarities at the victim and stated, "I'm going to kill you when I get out." At the time, Defendant's case had been set for a preliminary hearing in General Sessions Court. During another placed at 9:47 p.m. on June 19, 2016, Defendant apologized to the victim, discussed the probation violation proceedings, and he attempted to convince the victim not to speak with prosecutors. The trial court did not abuse its discretion in admitting the phone calls. Defendant is not entitled to relief on this issue.

Third, Defendant argues that the trial court erred by finding that Defendant violated his probation by being intoxicated. He asserts that the only evidence of his intoxication was Ms. Smith's testimony, which he argues was hearsay. As previously stated in this opinion, the trial court indicated that it would not consider Ms. Smith's testimony concerning Defendant's intoxication at the time of the domestic assault. In finding that Defendant violated his probation the trial court said that Defendant was intoxicated "by his own admission." As argued by the State, this most likely refers to the victim's interview with Detective Door, which was introduced at the probation violation hearing by Defendant, during which she says that Defendant told her he was drunk while trying to prevent her from leaving. Defendant is not entitled to relief on this issue.

Fourth, Defendant contends that the trial court erred by finding that he violated his probation by being around the victim because the probation violation warrant did not give him notice of this offense. However, it does not appear from the record that the trial court violated Defendant's probation for that reason. The trial court specifically said: "It's time to give it up, the Court finds that he violated the terms and conditions of his probation by committing a domestic violence assault and by being intoxicated, by his own admission, he was intoxicated." Both of these offenses were listed on the probation violation warrant. We note that the trial court mentioned in its findings that Defendant had previously been ordered to stay away from the victim; however, the trial court appears to have considered this behavior in determining whether to put Defendant's original eight-year sentence in effect. This issue is without merit.

Finally, Defendant argues that the trial court erred by placing his eight-year sentence into effect. We disagree.

The revocation of probation lies within the sound discretion of the trial court. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). It is well-settled that a trial court has the authority to order incarceration of a defendant for the entire term of the sentence

- 11 -

when the defendant's probation has been revoked. Tenn. Code Ann. §§ 40-35-310(a), 40-35-311(e)(1)(a); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999). As evidenced in the record, this is Defendant's fourth probation violation. Despite being placed back on probation after his previous violations, Defendant continues to commit crimes. The trial court did not err in this case by revoking Defendant's probation and ordering him to serve the remainder of his eight-year sentence by incarceration.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE